TOLEDO BAR ASSOCIATION *v.* KOLBY.

[Cite as Toledo Bar Assn. v. Kolby (1970),
22 Ohio St. 2d 185.]

(D. D. No. 70-1—Decided May 20, 1970.)

*Mr. Richard F. Michalak, Mr. Maurice D. O'Connell, Jr.,* and *Mr. Allen M. Adler,* for relator.

*Mr. Merritt W. Green* and *Mr. John W. Kitchen,* for respondent.

*Per Curiam.* It is the view of the relator that Paul H. Kolby attempted to bribe witnesses to testify that his client, Theodore Schultz, was not driving under the influence of alcohol, or to not testify at all. It is relator's position that the letter of respondent clearly establishes this aim in the following language thereof:

"* * * Then, Dick, as tactfully as you can, determine if they would be willing to take a few bucks, and here determine the amount, to testify that Ted Schultz was not driving as if he were under the influence or on the other hand, not testifying at all."

Relator claims that such clear intent of respondent's letter is supported by his conduct after receiving Suzor's indignant reply. Respondent did not write or call Suzor and deny the suggested attempt to have a witness bribed or otherwise explain away his letter.

Respondent admits to signing and sending the letter, but he insists that he did not mean what the language says. He explains that during an absence of his regular secretary, his daughter, a college student, took some notes from him, which she transcribed in her own words, and that he signed the letter without reading it.

Respondent's daughter, Barbara Lynn Kolby, testified that she could not take stenographic dictation and had never worked for her father or anybody else as a stenographer; that on May 24, 1967, her father "would sort of tell me what generally he wanted said, and I phrased a good deal of it myself. I would take down some of the words he used, but not all. I wasn't able to take them all down in longhand;" that she made the notes on a legal pad, which she threw away; that the term, "a few bucks," was her father's; that on the day in question she did nine or ten letters for her father, none of which he read before signing.

Canon No. 15 provides:

"How Far a Lawyer May Go in Supporting a Client's Cause.

"Nothing operates more certainly to create or to foster popular prejudice against lawyers as a class, and to deprive the profession of that full measure of public esteem and confidence which belongs to the proper discharge of its duties, than does the false claim, often set up by the unscrupulous in defense of questionable transactions, that it is the duty of the lawyer to do whatever may enable him to succeed in winning his client's cause.

"It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause.

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,'

to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him, for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client.''

Canon No. 29 reads as follows:

''Upholding the Honor of the Profession.

''Lawyers should expose without fear or favor before the proper tribunals corrupt or dishonest conduct in the profession, and should accept without hesitation employment against a member of the Bar who has wronged his client. The counsel upon the trial of a cause in which perjury has been committed owe it to the profession and to the public to bring the matter to the knowledge of the prosecuting authorities. The lawyer should aid in guarding the Bar against the admission to the profession of candidates unfit or unqualified because deficient in either moral character or education. He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice.''

Canon No. 32 reads:

''The Lawyer's Duty in Its Last Analysis.

''No client, corporate or individual, however powerful, nor any cause, civil or political, however important, is entitled to receive nor should any lawyer render any service or advice involving disloyalty to the law whose ministers we are, or disrespect of the judicial office, which we are bound to uphold, or corruption of any person or persons exercising a public office or private trust, or deception or

betrayal of the public. When rendering any such improper service or advice, the lawyer invites and merits stern and just condemnation. Correspondingly, he advances the honor of his profession and the best interests of his client when he renders service or gives advice tending to impress upon the client and his undertaking exact compliance with the strictest principles of moral law. He must also observe and advise his client to observe the statute law, though until a statute shall have been construed and interpreted by competent adjudication, he is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent. But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen.''

After a careful reading and consideration of the record in this grievance and disciplinary proceeding, we are in accord with the finding of the Board of Commissioners on Grievances and Discipline that the sending of the letter of May 24, 1967, to Suzor by respondent was a violation of Canons Nos. 15, 29 and 32 of the Canons of Professional Ethics.

We agree with the recommendation of the Board of Commissioners on Grievances and Discipline that Paul H. Kolby be suspended from the practice of law for an indefinite period. However, we do not agree that the imposition of the discipline be conditionally suspended for a period of 18 months. The recommendation of the board is modified and respondent is suspended from the practice of law for an indefinite period.

*Judgment accordingly.*

O'NEILL, C. J., LEACH, SCHNEIDER, HERBERT, DUNCAN and CORRIGAN, JJ., concur.*

LEACH, J., of the Tenth Appellate District, sitting for MATTHIAS, J.

*CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.